273 So.2d 459

**Theresa R. CHRISTIAN et al.**

v.

**Tom RABREN.**

**SC 56.**

Supreme Court of Alabama.

Feb. 8, 1973.

Rehearing Denied March 8, 1973.

James M. Prestwood, Andalusia, for appellants.

Tipler, Fuller & Barnes, Andalusia, for appellee.

JONES, Justice.

The respondents, Theresa R. Christian and her husband, J. M. Christian, appeal from a decree granting to the vendee specific performance of an alleged contract for the sale of land.

The pertinent facts are as follows:

W. J. Franklin was the owner of some 167 acres of land situated in Covington County, Alabama, of which he deeded 40 acres (sometimes referred to as 38 acres, more or less) to his daughter, Theresa Christian. The remaining 127 acres (or the remaining 86 acres as hereinafter discussed) passed at his death, intestate, to his three children, Wilbur Franklin, Mrs. Theresa Christian and Mrs. Athy Schlimer, as tenants in common, subject to his widow's right to dower and homestead. The appellee, Tom Rabren, wanting to buy the

127-acre tract and willing to take title subject to the widow's life interest, had his attorney draw up an option agreement between Rabren and the three children of W. J. Franklin and their spouses. However, Mrs. Schlimer and her husband lived in New York and had never expressed any desire to become a party to the option agreement. On March 25, 1969, the option agreement was presented to Mr. ad Mrs. Wilbur Franklin and Mr. and Mrs. Christian for their signatures. In the acknowledgement section of the agreement the notary, Albert Elmore, had crossed through the Schlimer's names before it was signed by the Franklins or the Christians.

The option agreement provided that, for the consideration paid ($5.00), Rabren could purchase the described 127 acres at any time within twelve months for $9,200.-00. Within the said twelve-month period Rabren notified the Franklins and the Christians in writing and orally that he intended to exercise his option and purchase their respective interests in the property. Rabren had been in correspondence with the Schlimers and their decision not to sell remained unchanged. Rabren concluded that he must settle for a two-thirds interest. The Franklins readily signed a deed conveying their one-third interest in the property to Rabren for $2,076.61, being the agreed value of his interest, rather than one-third of the option purchase price of $9,200.00. This was explained (though somewhat vaguely) by Rabren and Franklin to the general effect that Rabren learned for the first time after the execution of the option on March 25, but before the date of trial, that the widow, in addition to her life interest, was the fee owner of 41 acres of the 127-acre tract, the subject of the option.

The Christians, however, refused to convey their interest even upon tender of a certified check for $3,066.67, being exactly one-third of the agreed price for the whole 127 acres. The Christians claimed the option was void and not binding on them. Hence, Rabren commenced this action

seeking specific performance of the option agreement.

At the trial below, Mrs. Christian testified that it had been her understanding that when the land was sold to Rabren, the money ($9,200.00) would be placed in a trust fund to provide for their mother. When she learned that Wilbur Franklin intended to keep his share for himself and that her sister, Athy Schlimer, would not sell at all, Mrs. Christian refused to honor the option agreement. Rabren testified, on the other hand, that he knew nothing about any proposed trust agreement, and Wilbur Franklin said the only reason he knew why his sister (Mrs. Christian) had refused to sell was that she had changed her mind. There was no mention of any trust fund in the option agreement signed by the Christians.

After a hearing ore tenus, the trial court in its final decree filed January 28, 1972, found as follows:

"   .   .   .   that the respondents executed for consideration Exhibit 'A'  .   .   . whereby the respondents agreed to sell and convey to the complainant the lands made the subject of the suit  .   .   .

"   .   .   .   that within the term of said option the complainant notified the respondents of his decision to exercise said option, tendered to the respondents the sum required for the exercise thereof and requested and demanded that the respondents execute a deed as required by said option. The Court further finds that the respondents without just cause failed and refused  .   .   .   to execute conveyance of their interest within thirty days after said option was exercised by the complainant  .   .   ."

The court decreed that respondents (Christians) specifically perform the option within twenty days by "   .   .   .   executing and delivering to the Register of this Court for delivery to the complainant a warranty deed conveying *their undivided one-third interest* to complainant in the lands  .   .   ." [Emphasis ours.]

The court further decreed that should the Christians fail to comply with the decree within the time allowed, Rabren is the rightful owner of all the interest of the Christians in the land, and the register is directed to execute and deliver a deed conveying said property to Rabren.

On February 25, 1972, the Christians filed application for rehearing, setting forth, among other grounds, that the testimony established that the widow of W. J. Franklin has "complete ownership of forty acres" of the land involved in the 127-acre tract, and attached thereto a copy of a 1925 deed by which 41 acres, more or less, was conveyed by W. J. Franklin to his wife, L. B. Franklin.

After a hearing, the court on April 11, 1972, rendered a decree as follows:

"   .   .   .   the Court   .   .   .   is of the opinion that the decree entered in this cause on the 28th day of January, 1972,   .   .   .   should be amended to require the Respondents [Christians] to deliver to the Complainant [Rabren] a warranty deed conveying *their interest* in the property hereinafter described and as described in the original decree within twenty days from the date of this amended decree and failing therein that the Register   .   .   .   present to the Covington County Bank a certified check which was introduced in this cause payable to the Respondents   .   .   .   endorse the same   .   .   .   and upon receipt of   .   .   .   $3,066.67, execute a Register's deed conveying to the Complainant *all interest* of the Respondents in and to the lands   .   .   .   *or any interest which they might hereafter acquire* in said lands. [Emphasis ours.]

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that within twenty days from the date of this decree that the Respondents execute a warranty deed to the Complainant conveying the following described lands to-wit:

"   .   .   .

"and deliver the same to the Register of this Court for delivery to the Complainant and the Register is hereby directed to deliver to the Respondents the certified check which was introduced in the evidence in this cause."

The appellants, Mr. and Mrs. Christian, assign error as follows:

"1. The Court erred in overruling the demurrer of the Appellants filed April 27, 1971 to the bill of complaint as amended.

"2. The Court erred in its decree on the application for rehearing by ordering the Appellants to execute a warranty deed to the lands described in the decree and, without specifying the limited, undivided interest of Appellants, and in the same decree the Court also erred in ordering the Register to convey any *after acquired* interest of Appellants in the described lands, in the event the Appellants failed to deliver a deed to the Register conveying the *whole* interest in the whole tract.

"3. The Court erred in decreeing specific performance on an instrument that is unenforceable on its face.

"4. The Court erred in ordering specific performance on an alleged option which the Appellee himself acknowledged was incorrect and that he subtracted 41 acres from the original option, for the purpose of computing the value of the land but did not eliminate the 41 acres from the tract description in the instrument executed March 25, 1969."

In addressing ourselves to appellants' first assignment of error, a brief recital of the pleadings may be helpful.

The portions of the original bill here pertinent are:

" . . . Respondents executed an option to sell certain real estate, a copy of said option is attached hereto and made Exhibit 'A' . . .

" . . . Complainant has notified the Respondents of his decision to exercise said option . . . has demanded that the Respondents execute a deed as required by said option; . . . has tendered the money to the Respondents; that your Respondents have failed and refused to comply with the terms of said option.

" . . . Complainant has been, and is now ready to comply . . . [and] offers to do equity.

"The PREMISES CONSIDERED, your Complainant prays . . .

" . . . that the Court enter an order directing said Respondents to comply with the terms of said option and execute a warranty deed to your Complainant conveying said real estate.

"Complainant prays for such other general and special relief . . ."

The trial court sustained respondents' demurrer to the original bill, and complainant within the time allowed amended his complaint by adding the following averment and prayer:

" . . . that the Respondents own an undetermined interest in said property . . .

" . . . prays that this Court will determine the interest in said property of the Respondents and will abate the purchase price to be commensurate with the interest of the Respondents."

The court overruled respondents' demurrer to the amended bill, and this ruling is assigned as error.

After a careful review of appellee's bill as amended, with the option agreement incorporated therein by reference, we are at the conclusion that appellants' demurrer to said bill was properly overruled by the trial court. Our decisions have followed the rule that a complainant's right to equitable relief must be shown with sufficient certainty to enable the court to see

**50**

plainly that the complainant has such a right as warrants the court's protection; and, too, the averments of the bill must inform the respondent of the nature of the case which he is called upon to defend. Swann v. Reconstruction Finance Corp., 241 Ala. 286, 2 So.2d 770; Adler v. First National Bank of Birmingham, 233 Ala. 325, 171 So. 904. The same precision of statement is not generally required in equity as at law, and the certainty with which averments must be made will always depend on the particular circumstances of each case. Fuqua v. Roberts, 269 Ala. 59, 110 So.2d 886.

■ When, as here, a bill shows a contract of sale and an agreement to convey which is at least definite enough to be performed, it is not necessary that said bill should negate any other conditions or terms. If such are asserted by the respondents, these are defensive matters available only by plea or answer. A complaintant is only required to show in his bill affirmatively a right to relief; he is not required, nor would it be proper, to anticipate and negate all possible defenses. McKenzie v. Sutton, 250 Ala. 447, 34 So. 2d 825; Penney v. Norton, 202 Ala. 690, 81 So. 666. Appellants' demurrer to the bill as amended was without merit and properly overruled.

The appellants' second assignment of error takes the following points: (1) The trial court erred in requiring the appellants to convey all of their interest in the subject real property without specifying the extent of their interest, and (2) in ordering the appellants to convey any "after acquired" interest in the property.

■ Though the Christians admitted in their answer that they owned an undivided one-third interest in the 127-acre tract described in the option contract, the deed attached to appellants' application for rehearing indicates that, in fact, the appellants own only a one-third interest in some 86 acres. The decree on application

for rehearing shows that the trial court recognized that the extent of Christians' interest in the 127-acre tract was in doubt. Rabren's bill as amended averred that the Christians owned an undetermined interest and prayed that the court determine Christians' interest in said land and abate the purchase price commensurate therewith. Consequently, the trial court did err in ordering the Christians to convey their interest without first determining the extent of that interest. The trial court should have made a determination as to the extent of appellant's interest in the 127-acre tract described in the option agreement. Having so done, the court should have ordered an abatement of the purchase price if appropriate.

■ On the second point raised in this assignment, we agree with the appellants that the trial court erred in ordering them to convey any "after acquired" interest in subject property to the complainant. The record does not reveal the trial court's reason or authority for such order. We can find no basis in law or fact to support this aspect of the trial court's decree. The only interest the Chrsitians may be required to convey is that which they owned on March 25, 1969, the day the option contract was executed, plus any interest which they may have acquired after March 25, 1969, but prior to the date of the final determination of this cause on rehearing. Enslen v. Allen, 160 Ala. 529, 49 So. 430; Kent v. Dean, 128 Ala. 600, 30 So. 543; 5A A. Corbin, Corbin on Contracts § 1170. See also Pickard v. Osburn, 261 Ala. 206, 73 So.2d 542.

■ Appellants' third assignment of error contends that the trial court erred in ordering the specific performance of an instrument unenforceable on its face. Appellants argue in brief in support of this assignment that there was never a meeting of minds, ambiguity in the consideration and purchase price, and that the dower interest of the widow is not provided for in the option agreement. We agree that the

option is not an example of expert draftsmanship, but find that it is sufficiently certain in its terms to be enforceable.

■ The testimony revealed, and the trier of fact evidently concluded, that the Schlimers' names had been crossed out in the acknowledgement section of the option prior to its execution by the Christians. Where tenants in common start out to convey all their interests together and the final effect of their action is to leave one or more not bound, it does not follow that the transaction is still in fieri and not binding on the others. Pearce v. Third Ave. Improvement Co., 221 Ala. 209, 128 So. 396.

■ In the *Pearce* case, supra, this court cited with favor the Texas case of Ward v. Walker (Tex.Civ.App.), 159 S.W. 320, which was said to be typical of cases holding contracts by tenants in common, not enforceable as to all interests, the proper subject of specific performance as to the interest of those who have properly executed the contract at the option of the vendee and adopting the followig language from that decision:

"We are unable to see anything unconscionable, inequitable, or unjust in requiring the appellees to perform, so far as they are able, the contract which they have deliberately made. The legal effect of the contract was that each of them for sufficient consideration bound himself to sell and convey the land, so far as he was able; that is, his undivided interest."

We think the rule adopted by the *Pearce* case, supra, as set out above is controlling in the instant case. Specific performance pro tanto at the election of the vendee where full performance cannot be had has been a recognized remedy in equity from the earliest history of this jurisdiction. Saliba v. Brackin, 260 Ala. 103, 69 So.2d 267; Milton Realty Co. v. Wilson, 214 Ala. 143, 107 So. 92; McCreary v. Stallworth, 212 Ala. 238, 102 So. 52; Bass v. Gilliland's Heirs, 5 Ala. 761.

■ Appellants insist the option is unenforceable because the Christians signed on a condition (the Schlimers would sign and a trust would be established for the mother) that was never met. If this were the case, the complainant would not be entitled to specific performance for the reason that no binding contract can come into being until there is a meeting of the minds. Jones v. McGivern, 274 Ala. 232, 147 So.2d 813; Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A.L.R. 1153. However, the evidence at trial was in conflict on this point. Consequently, an issue of fact was presented, and the trial court found that such condition was not involved. We hold, therefore, that the option contract, which is the subject of this cause, was enforceable by the complainant at least to the extent the appellants are able to convey.

We pretermit any further consideration of appellants' fourth assignment of error since it appears that this assignment raises essentially the same point already disposed of under our treatment of assignment of error number two, which necessitates a reversal in part of the decree.

In summary, we hold that the trial court's decree must be set aside as to that aspect discussed under assignment of error number two, and the cause remanded for a determination of the extent of the interests of respondents in the subject property with abatement of the purchase price commensurate with such determination.

Affirmed in part, reversed in part and remanded.

HEFLIN, C. J., and MERRILL, BLOODWORTH, MADDOX and McCALL, JJ., concur.

COLEMAN and FAULKNER, JJ., dissent.

COLEMAN, Justice (dissenting):

The respondents, Theresa R. Christian and her husband, J. M. Christian, appeal

from a decree granting to the vendee specific performance of an alleged contract for the sale of land.

The averments of complainant's amended bill of complaint are to the following effect:

The respondents executed an option to sell certain land. A copy of the option is made a part of the bill as Exhibit A thereto. As here pertinent, Exhibit A recites:

"KNOW ALL MEN BY THESE PRESENTS, That I, Wilbur Franklin and wife, Maggie M. Franklin, Athy Schlimer and husband, Robert Schilmer (sic), Theresa R. Christain (sic) and husband, J . M. Christain (sic), in consideration of $5.00 paid by Tom Rabren, the receipt whereof is hereby acknowledged, we do hereby, for ourselves, our heirs, executors and administrators, agree to sell and convey to said Tom Rabren, or his assigns, for the consideration hereinafter mentioned the following described real estate  .  .  .  . to-wit:

"(Description)

"The consideration to be paid by said Tom Rabren, or his assigns shall be the sum of $9,200.00. This option may be accepted by said Tom Rabren or his assigns within twelve months from the date hereof by written notice to that effect. Conveyance shall be made within thirty days after such acceptance by a warranty deed conveying a clear title free from all encumbrances.

"It is agreed that if the said Tom Rabren, or his heirs and assigns, however the case may be, shall fail to accept this option within the time above mentioned, or shall after such acceptance fail to pay the said sum of $9,200.00, the consideration above mentioned, at the time and in accordance with the terms and conditions hereinbefore mentioned, the said Tom Rabren, or his heirs and assigns, however the case may be, shall forfeit

the said sum of $5.00 paid to us, as hereinbefore acknowledged."

Exhibit A shows that Wilbur Franklin, Maggie M. Franklin, Theresa R. Christian, and J. M. Christian signed the option and acknowledged execution thereof before a Notary Public.

Exhibit A shows that Athy Schlimer and Robert Schlimer did not sign the option. The exhibit shows that their names were typed in the body of the certificate of acknowledgment together with the names of the other four sellers, but a line was drawn through the names of Athy Schlimer and Robert Schlimer so that the certificate does not appear to indicate that the Schlimers acknowledged that they executed the option.

As amended, the bill recites:

"Your Complainant further avers that the Respondents own an undetermined interest in said property described in Exhibit A."

The option is dated March 25, 1969. Complainant avers that he has notified respondents of his decision to exercise the option on March 17, 1970, "and several times thereto" and has demanded that respondents execute a deed as required by the option; "that he has tendered the money to the Respondents," and they have refused to comply with the terms of the option.

Complainant avers that he is now ready to comply with the terms of the option and offers to do equity. He prays that the court "enter an order directing said Respondents to comply with the terms of said option and execute a warranty deed to your Complainant conveying said real estate."

The amended bill includes the following prayer:

"Complainant further prays that this Court will determine the interest in said property of the Respondents and will abate the purchase price to be commen-

surate with the interest of the Respondents."

The court overruled respondents' demurrer to the amended bill, and this ruling is assigned as error.

Respondents filed answer to the amended bill. In their answer respondents admitted that they owned a one-third interest in the land.

After a hearing ore tenus on November 19, 1971, the court rendered a final decree filed January 28, 1972. The court found that respondents, for a consideration, executed Exhibit A " . . . . whereby the respondents agreed to sell and convey to the complainant the lands made the subject of the suit . . . . "

The court further found that within the terms of the option, complainant notified respondents of his decision to exercise the option, tendered to respondents "the sum required for the exercise thereof," and demanded that respondents execute a deed as required by the option. The court further found that respondents, without just cause, refused "to execute conveyance of their interest within thirty days" after the option was exercised by complainant.

The court decreed that respondents specifically perform the option within twenty days by executing and delivering to the register, for delivery to complainant, a warranty deed conveying their undivided one-third interest in the land to complainant.

The court further decreed that should respondents fail to comply with the decree within the time allowed, the complainant is the rightful owner of all the interest of respondents in the land, and the register is directed to execute and deliver to complainant a deed conveying said property to complainant.

By decree filed February 16, 1972, the court, ex mero motu, amended the decree by substituting "30 days" for "20 days" wherever the same appear in the original decree.

On February 25, 1972, respondents filed application for rehearing, and the court suspended the decree pending the court's ruling on the application for rehearing.

After a hearing, the court, on April 11, 1972, rendered a decree wherein the court expressed the opinion that the decrees of January 28 and February 16 should be amended to require respondents to deliver to complainant a warranty deed conveying " . . . . their interest in the property hereinafter described and as described in the original decree within twenty days from the date of this amended decree and failing therein that the Register . . . . " should present to the Covington County Bank a certified check which was introduced in the cause, payable to respondents, and endorse the same, and upon receipt of $3,066.67 execute a register's deed conveying to complainant all interest of respondents in the land " . . . . or any interest which they might hereafter acquire in said lands."

The court then decreed as follows:

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that within twenty days from the date of this decree that the Respondents execute a warranty deed to the Complainant conveying the following described lands to-wit:

" . . . . . . . . . .

"and deliver the same to the Register of this Court for delivery to the Complainant and the Register is hereby directed to deliver to the Respondents the certified check which was introduced in the evidence in this cause.

"It is further Considered, Ordered, Adjudged and Decreed by the Court that if said Respondents fail to deliver said deed to the Register of the Court within twenty days from the date of this amended decree, the Register of this Court is hereby directed to present the check, which has previously been introduced in evidence, to the Covington County Bank

to endorse thereon the names of the Respondents, by the Register as their attorney in fact under the provision of this decree and upon receipt of the payment of said money to execute and deliver to the Complainant a Register's deed conveying to the Complainant the interest of the Respondents or any after acquired interest of the Respondents in and to the following described lands to-wit:"

At the first hearing on November 19, 1971, three witnesses testified. Their testimony appears on sixty-one pages of the transcript. Eleven exhibits were received in evidence.

Respondents assign errors as follows:

"1. The Court erred in overruling the demurrer of the Appellants filed April 27, 1971 to the bill of complaint as amended. (R. 7)

"2. The Court erred in its decree on the application for rehearing by ordering the Appellants to execute a warranty deed to the lands described in the decree and, without specifying the limited, undivided interest of Appellants, and in the same decree the Court also erred in ordering the Register to convey any *after acquired* interest of Appellants in the described lands, in the event the Appellants failed to deliver a deed to the Register conveying the *whole* interest in the whole tract. (R. 15 & 16)

"3. The Court erred in decreeing specific performance on an instrument that is unenforceable on its face. (R. 2 and 3)

"4. The Court erred in ordering specific performance on an alleged option which the Appellee himself acknowledged was incorrect and that he subtracted 41 acres from the original option, for the purpose of computing the value of the land but did not eliminate the 41 acres from the tract description in the instrument executed March 25, 1969. (R. 63 and 64)"

By seeking specific performance of a contract, the complainant assumes the burden of averring and proving that the respondents entered into a valid contract for the sale of certain land to the complainant, the terms thereof, and performance by the complainant on his part, or a sufficient excuse for nonperformance, accompanied with averments showing he is able and willing to perform, and offers so to do. Chandler v. Bodeker, 219 Ala. 357, 122 So. 435.

The question here is whether the averments of the bill show that the respondents entered into a contract which bound them to convey separately the land in suit or any part of it. The respondents assign as error the overruling of a demurrer to the complaint as amended, one of the grounds of which was that Exhibit "A" to the bill of complaint shows on its face that it is unenforceable. Not only is it a well-established rule of pleading that in a bill for specific performance great accuracy of averment is required, Tillman v. Calhoun Lumber Co., 245 Ala. 595, 18 So.2d 561; but, also when tested by demurrer, the averments of a bill for specific performance must be construed most strongly against the complainant. *Tillman,* supra; Williams v. Owens, 273 Ala. 625, 143 So. 2d 633. This court, in Jackson Realty Co., Inc. v. Yeatman, 219 Ala. 3, 121 So. 415, approved in AGM Drug Co. of Alabama v. Dobbs, 277 Ala. 493, 172 So.2d 379, stated:

"It is the settled rule of our decisions, that 'bills in chancery must set forth, not the evidence, but every material averment of fact necessary to complainant's right of recovery. So complete must be the averments of fact that, on demurrer, or decree pro confesso, the court can, without evidence, be able to perceive and affirm that complainant is entitled to the relief prayed. Relief can only be granted on allegations and proof; and the latter will never be allowed to supply omissions or defects in the former. Allegations, *admitted* or proved, are the only premises which will uphold a chancery

decree.' McDonald v. Mobile Life Ins. Co., 56 Ala. 468; Westbrook v. Hayes, 137 Ala. 572, 34 So. 622. . . ." (219 Ala. at 6, 121 So. at 418)

The terms of the option contract, Exhibit "A," are that six persons named therein agree to sell and convey to the complainant, for the consideration stated, the land in suit. The option provides that the complainant may accept the option within twelve months from its date, and that: "Conveyance shall be made within thirty days after such acceptance by a warranty deed conveying a clear title free from all encumbrances." There is nothing apparent in the option whereby the makers, or any of them, agreed to convey anything less than the entire title to all the land.

In the original bill, the complainant prays for a decree "directing said Respondents to comply with the terms of said option and execute a warranty deed to your Complainant conveying said real estate."

By amendment to the bill, the complainant avers that the respondents "own an undetermined interest in said property" and prays that the court abate the purchase price to be commensurate with the interest of the respondents.

There is no prayer that the respondents convey their interest, determined or undetermined. The option itself, by naming six persons to sign as makers, gives notice that none of the six makers own the entire interest in the land, and, necessarily, it follows that each maker owns an interest less than the whole. Where a contract is set out in haec verba, and is uncertain and ambiguous, the pleading must put some definite construction on it by averment. 81 C.J.S. Specific Performance § 128, page 687. The option, Exhibit "A," shows on its face that the parties contemplated that all six makers named in the option would sign it. It does not show that the respondents agreed to convey their interest separately from the other contemplated signers.

The burden is on the complainant to aver facts, not evidence, to show that the respondents entered into a contract to convey separately the land in suit, or any part of it. The complainant failed to carry this burden.

On an appeal from decree denying specific performance of a contract to sell land, this court said:

"In Axe v. Potts, 349 Pa. 345, 348, 349, 37 A.2d 572, 574, 154 A.L.R. 764:

"'* * * In the present case, the agreement designated three persons as the owners, and when executed by only two of them, was patently incomplete. The agreement was not joint and several, but joint only, and we cannot substitute for the terms therein set forth the terms of a new and different contract. * * *'

"The rule here applicable has been stated as follows:

"'Where one of several owners of property in common promises to join in a conveyance of the whole with the others but does not promise that the others will so join and does not promise that he will convey his own interest separately, it is no breach by him to refuse to convey when the others will not or cannot join. No judgment for damages against him would be justified; nor would a decree for specific performance against him separately, whether with or without compensation for non-conveyance of the other interests. Such a decree is not justified unless he promised that the interests of the others as well as his own would be conveyed. Even if all the owners had jointly contracted, it would generally be unjust to decree conveyance by one when conveyance by the others cannot be compelled.' Corbin on Contracts, Vol. 5, § 1160, at page 694.

"The decree is in accord with this rule and is affirmed." Jones v. Mc-

Givern, 274 Ala. 232, 234, 235, 147 So.2d 813, 815.

For the reasons stated above, I am of opinion that the decree appealed from should be reversed and the cause remanded.

FAULKNER, J., concurs.